UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IP CO., LLC, d/b/a INTUS IQ, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | |
| | ) | |
| SENSUS USA, INC., and TRILLIANT | ) | NO. 2:09-cv-037-DF |
| NETWORKS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S OPENING *MARKMAN* BRIEF IN SUPPORT OF ITS
<u>PROPOSED CLAIM CONSTRUCTIONS</u>**

I.      **Introduction**

Plaintiff IP CO, LLC d/b/a Intus IQ ("Intus IQ" or "Plaintiff") hereby submits this brief

in support of its proposed constructions of the disputed claim terms of U.S. Patent Nos.

6,249,516 (the "'516 Patent") (Exhibit A) and 7,054,271 (the "'271 Patent") (Exhibit B).

Plaintiff has sued Sensus USA, Inc. and Trilliant Networks, Inc. (collectively "Defendants") for

infringement of the '516 Patent and the '271 Patent.  Each of the disputed claim terms are

analyzed below. Attached hereto as Exhibit C is a table identifying each of the Parties' proposed

constructions for the disputed claim terms.  Attached hereto as Exhibit D is a table identifying

the Parties' agreed upon claim constructions.[1]

II.     **The Technology at Issue**

Dr. Edwin Brownrigg, the lead inventor of the Patents-in-Suit, is widely-recognized as a

leader in the wireless networking field, specifically networks that enable wireless devices to form

efficient, self-healing networks.  Dr. Brownrigg has over thirty years experience with wireless

data communication, including academic, research, and government-related positions.  Notably,

since 1994 Dr. Brownrigg has engineered and perfected software for "mesh" networking.  Dr.

Brownrigg is the inventor of several pending patent applications and three issued patents which

have been licensed to nearly thirty different companies.[2]

A.      ***The '516 Patent – "Wireless Network Gateway and Method for Providing Same"***

The '516 Patent is directed towards communications within a wireless network.

Specifically, digital packets are transmitted wirelessly using radio frequency between clients on

---

[1]     Plaintiff hereby further agrees to Sensus' proposed construction of "originating client," as indicated in Exhibit D.  At this time, Plaintiff is unaware of any objections from Defendants.
[2]     The ZigBee Alliance, the purported alliance whose standard is employed by Sensus among others, filed a reexamination of the '516 Patent, in which they included approximately 745 pages of references.  The '516 Patent emerged from that reexamination unscathed.

the network, as well as between clients and the server on the network.  '516 Patent [Ex. A] at

Col. 4, l. 51 – Col. 5, l. 17.



As shown above, clients are either in direct communication ("1-hop") with the server, such as

clients 1, 4, and 6; or, if the client cannot directly communicate with the server – for example

due to distance or an obstruction – the client communicates with the server through another

client ("multi-hop"), such as clients 3, 2, 5, 8, and 7.  Id.  The '516 Patent describes a system for

optimizing these paths as network conditions change in order to provide a robust and efficient

network.  Id. at Col. 4, ll. 39-48.  As new clients join or leave the network, or as conditions such

as traffic or client speed change, the clients modify their paths to the server in order to optimize

the network.  As shown below, client 2 reroutes itself through client 5 when client 1 goes down:



These paths can be optimized based on a number of factors, as described in the '516 Patent including, for example: the number of hops, the amount of traffic, and the robustness of an intervening client, or speed of an intervening client.  Id. at Col. 9, ll. 6-24.  The independent claims of the '516 Patent are directed toward the "gateway" or "server" of the above described network, and provides for communication between the clients of the wireless network and a second network, such as the Internet. See, e.g., id. at Claims 1, 6, and 15.

B. *The '271 Patent – "Wireless Network System and Method for Providing Same"*

The '271 Patent, which has a similar disclosure as the '516 Patent, is also directed toward communications within a wireless network.  The independent claim of the '271 Patent is directed toward the wireless network system, which includes a wireless router client and a wireless router server.  The client includes a client program that comprises "instructions for determining an optimal route from the client to the server."  '271 Patent [Ex. B] Claim 1.

III. **Legal Standards Governing Claim Construction**

A. *General Principles*

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation omitted).  In construing a patent's claims, there is always a "'heavy presumption'" that claim terms take on their full ordinary and customary meaning. CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002) (citation omitted).  Claim construction "is not an obligatory exercise in redundancy." U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997). "[C]ourts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims." O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1362 (Fed. Cir. 2008) (emphasis in original); see

also Brown v. 3M, 265 F.3d 1349, 1352 (Fed Cir. 2001) (holding that claims did "not require elaborate interpretation").

In construing claim terms, courts look first to the intrinsic evidence, which begins with an examination of the context in which the term is used in the asserted claim.  See Biagro W. Sales, Inc. v. Grow More, Inc., 423 F.3d 1296, 1302 (Fed. Cir. 2005) ("It is elementary that claim construction begins with, and remains focused on, the language of the claims.").  Courts then look to the patent's specification, which "'is always highly relevant to the claim construction analysis,'" and the "'single best guide to the meaning of a disputed term.'"  Phillips, 415 F.3d at 1315 (citation omitted).  Courts also consider the patent's prosecution history, which can demonstrate how the PTO and inventor understood the patent.  Id. at 1317.  With regard to means-plus-function claims under 35 U.S.C. § 112, claim construction involves two steps: (1) determining the function of the recited claim; and (2) identifying the corresponding structure disclosed in the written description, and equivalents thereof.  See Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1332 (Fed. Cir. 2006).  A structure is "corresponding" if it is clearly linked or associated with performing the recited function, as perceived by one of ordinary skill in the art.  Medtronic, Inc. v. Advanced Cardiovascular Sys., 248 F.3d 1303, 1311, 1313 (Fed. Cir. 2001).   Moreover, the disclosure of structure may be inherent or implicit in the specification if it would have been clear to those skilled in the art what structure corresponds to the means-plus-function limitation. Atmel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1380 (Fed. Cir. 1999).

## IV.   The Parties' Differing Approaches to Claim Construction

Generally speaking, the claim terms at issue are either self-defining in the claims themselves or use words with well-known meanings to those of ordinary skill in the art.

Accordingly, in most instances, the plain and ordinary meaning of the disputed claim terms of the '516 and '271 Patents should control.  Nonetheless, Defendants' initial list of claim terms for construction included nearly 50 terms, covering virtually every word of the ten claims at issue.  Although Plaintiff has worked with Defendants to reduce the claim terms in dispute, the Defendants still ask the Court to construe some 31 claim terms.  Many of Defendants' proposed constructions are unsupported or import limitations from the specification, in an apparent attempt to manufacture a non-infringement position.  See Phillips, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").  These proposed constructions fall far short of overcoming the heavy presumption in favor of the ordinary meaning, and should be rejected.  See Johnson Worldwide Assocs. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999).

In other instances, Defendants unjustifiably allege that claim terms are indefinite, ignoring the plain language of the claim and specification.  The purpose of the definiteness requirement is to ensure that the claim language adequately notifies the public of the patentee's right to exclude.  35 U.S.C. § 112 ¶ 2.   But it "does not compel absolute clarity.  Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citation omitted).  As this Court has found, where the specification provides guidance as to the meaning of a term, the claim is not indefinite.  Paid Search Engine Tools, LLC v. Yahoo! Inc., No. 2:07-CV-403-DF-CE, 2010 WL 1904545, at *9-*10 (E.D. Tex. May 10, 2010) (finding "of interest" as used in a keyword bid optimization patent not indefinite because the specification provided guidance as to what criteria were "of interest").  As will be illustrated below, Defendants' allegations of indefiniteness must similarly fail.

## V.     The Claim Terms in Dispute – '511 Patent

### A.  *"changing [changes] the transmission path"* ('516 Patent Claims 1, 6, 15)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls.  In the alternative, "adding, replacing, and/or removing one or more clients in the transmission path" | Changes the entire path description from the client to the server | Changes the entire path description from all clients to a server |

This term has an unambiguous meaning and does not require construction.  Claim 1 itself describes how a transmission path of a client to the server "can be through one or more of other clients" of the network.  Thus "changing" the transmission path means just what it says – that it involves adding, replacing, or removing one or more of the clients on the path.  The Court need not construe the plain and ordinary language of this term.  Nonetheless, should the Court deem construction necessary, then the Court should construe this term within the context of the claims to mean "adding, replacing, and/or removing one or more clients in the transmission path."  This term is consistent with the specification, which describes how a transmission path (which is a path of one or more "hops" between clients or between a client and server) can change by adding or removing just a single "hop," thereby not changing the "entire" transmission path.  See '516 Patent [Ex. A] at Col. 6, ll. 18-26; Col. 9, ll. 35-45

As this Court has stated, "[i]t is not necessary to restate limitations in a construction when the limitations are already clarified in the claim." Accolade Sys. LLC v. Citrix Sys., 634 F. Supp. 2d 738, 749 (E.D. Tex. 2009).  Defendants' proposed constructions impermissibly narrow the claim by inserting the limitation "*entire.*"  Nothing in the claims, specification, or file history requires – or even suggests, for that matter – that the transmission path must change in full, i.e., that every node in the transmission path must change.  In fact, it is contemplated that some will

stay the same.  See, e.g., '516 Patent [Ex. A] at Col. 10, l. 62 – Col. 11, l. 3.  This necessarily

contradicts Defendants' position.  Trilliant goes even further by requiring that "the transmission

path" of *all* clients to the server must change. Defendants' constructions thus violate controlling

Federal Circuit precedent.  See Phillips, 415 F.3d at 1323.

**B.**  ***"client"*** **('516 Patent Claims 1, 6, 15; '271 Patent Claims 1, 2, 3, 8)**

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "an equipment, program, and/or device that is capable of communicating with or using a service from at least one server or another client" | A computer program that requests and receives a service from a server | No construction of this term/phrase is necessary at this time. |

As used in the Patents-in-Suit, "client" is an unambiguous term that does not require

construction.  Nonetheless, should the Court deem construction of this term necessary, the Court

should construe this term to mean "an equipment, program, and/or device that is capable of

communicating with or using a service from at least one server or another client."

Sensus' construction is overly limiting.  First, it limits the client to a "computer

program," but the '516 Patent contemplates other embodiments of the client.  See, e.g., '516

Patent [Ex. A] at Col. 6, ll. 8-10; Fig. 13.  Second, under Sensus' proposed construction, clients

must "request" a service from the server.  While the client *can* request a service, nothing in the

claims, specification, or file history require it to do so.  See, e.g., id. at Col. 9, ll. 56-58 ("[t]he

tree structure is maintained by server S, and is transmitted to any client that *may* request it").

**C.**  ***"digital controller"*** **('516 Patent Claims 1, 4, 15; '271 Patent Claim 1)**

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and | Sensus takes no position on construction of this | Communications bridge between two |

| ordinary meaning controls. Alternatively, should the Court deem construction necessary, Plaintiff proposes the following construction: "an equipment, program, and/or device that facilitates transmission of digital data." | claim term at this time | networks |
|---|---|---|

The functions of the "digital controller" are defined by the claims themselves.  See e.g., id. at Claim 1 (stating in part "said digital controller communicating with said first network via said radio modem and communicating with said second network via said network interface"). There is no need for the Court to construe this term.  See Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001) (where claim language is clear on its face "then our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified").  Trilliant's proposed construction impermissibly limits the claim by specifying a single device as the digital controller, yet the specification discloses multiple devices that can perform the functions of the digital controller: "A router, bridge or other device is used to connect the server to a network."  Id. at Col. 17, ll. 25-27.  Should the Court deem construction necessary, the Court should construe this term to mean "an equipment, program, and/or device that facilitates transmission of digital data."

**D.  *"dynamically updating the map of transmission paths"* ('516 Patent Claim 15)**

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "refreshing or modifying a map of transmission paths as needed" | Continuously modifying the map of transmission paths to store a new optimal transmission path from a client to the server when the client hears a transmission by another client that has a shorter transmission path to the server | No construction of this term/phrase is necessary at this time |

The meaning of this phrase is evident from the claim language itself, which describes how a transmission path can be optimized, and the map updated with those transmission paths. Id, at Claim 15 ("dynamically updating the map of transmission paths, adding and removing clients and changing the transmission paths of clients to optimize the transmission paths").  Thus, no construction of this language is necessary.  See Accolade, Sys., 634 F. Supp. 2d at 749. Sensus' proposed construction impermissibly imports exemplary language from the specification describing the "pooning" process, in which a client "listens" to transmissions on the network to update its link to a better path.  '516 Patent [Ex. A] at Col. 21, ll. 21-36.  But the specification discloses **multiple** ways to dynamically update the map, including a client randomly probing its neighbors to determine a better route, a client switching server destinations, or an "upstream" client changing its route resulting in a new route for its downstream clients.  See '516 Patent [Ex. A] at Col. 12, ll. 7-36;[3] Figures 2*a* – 2*o*; see also Response to Office Action (Oct. 29, 2007) in SN 90/008,005, at 14-15 (Reexamination of '516 Patent) (attached hereto as Exhibit G) (describing factors used as a basis for optimization).  Thus Sensus' proposed construction should be rejected, as the Federal Circuit has emphatically warned against reading examples from the specification into the claims.[4]  See, e.g., CollegeNet, Inc. v. ApplyYourself, Inc., 418 F.3d 1225,1231 (Fed. Cir. 2005) ("this court will not at any time import limitations from the specification into the claims").  Should the Court deem that construction of this term is

---

[3]     Column 12 of the '516 Patent reads in part: "Client 7 starts randomly probing its neighbors looking for a shorter route to a server.  Client 7 finds a shorter route to client 26. Client 7 informs server 14 to drop client 7 from server 14's routing table, and client 7 informs server 26 to add client 7 to its routing table … In FIG. *20, another example of individual dynamic routing* is illustrated for client 44.  This client node shortens its route from 3 to 2 hops by switching server destinations."

[4]     Not only does Sensus import limitations from the specification, but Sensus attempts to import limitations from a pending application.  In particular, Sensus' alleged support is based on the file history of U.S. Patent Application SN 11/300,902, a continuation of the '271 Patent. Statements made during prosecution of that application concern a different claimed invention.

necessary, the Court should construe this term to mean "refreshing or modifying a map of transmission paths as needed," which is consistent with the claim language and specification.

### E.  *"gateway"* (**'516 Patent Claims 1, 6, and 15**)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "an equipment, program, and/or device that facilitates communication between two networks" | An equipment, program, or device that connects one network to another network | No construction of this term/phrase is necessary at this time |

The plain and ordinary meaning of "gateway" as used within the claims themselves is unambiguous – further construction would not provide additional clarity.  See, e.g. '516 Patent [Ex. A] at Claim 1 ("A server providing a gateway between two networks").  However, should the Court deem construction necessary, it should construe "gateway" to mean "an equipment, program, and/or device that facilitates communication between two networks," which is consistent with the claim language and specification.  Id. at Col. 5, ll. 50-52; Col. 7, ll. 64-66; Col. 17, ll. 27-30.  Sensus' proposed construction improperly narrows the claim by requiring that the gateway perform only the singular function of *connecting* two networks.

### F.  *"group consisting essentially of"* (**'516 Patent Claims 1, 6, and 15**)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "group including but not limited to" | group having as choices only | No construction of this term/phrase is necessary at this time |

The phrase "consisting essentially of" means that the group of listed elements is open to additional elements that do not materially affect the basic and novel characteristics of the invention.  See Ecolab, Inc. v. FMC Corp., 569 F.3d 1335, 1343-44 (Fed. Cir. 2009); MANUAL

OF PATENT EXAMINING PROCEDURES ("MPEP") § 2111.03.  The claim must be read in light of the specification to determine whether the additional elements are part of the group.  MPEP § 2111.03.  In contravention of this clear directive, Sensus proposes a construction that necessarily requires a closed group – a construction which alters the meaning of the claim.  In doing so, Sensus ignores the specification which contemplates "other factors [that] can [] affect the quality of the data transmission." '516 Patent [Ex. A] at Col. 9, ll. 11-12.  In particular, the specification contemplates "multiple factors [that] can be used to stabilize or optimize the wireless network system."  Id. at Col. 9, ll. 23-24.  Thus, the patentee's intent is clear that the "group consisting essentially of" is not limited only to the factors expressly listed.  Thus, should the Court deem that construction of this term is necessary, the Court should construe this term to mean "group including but not limited to."

### G.  *"header"* ('516 Patent Claim 6)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "a portion of a packet containing information that may include routing information" | A portion of a data packet that contains information used to route the data packet through the network including the source address, the address of all hops along the way, and the destination address | No construction of this term/phrase is necessary at this time |

"Header" is a commonly understood term that need not be construed.  Sensus' proposed construction imports limitations from the specification that fail to appear in the claim by proposing that the "header" ***must*** include "the source address, the address of all hops along the way, and the destination address."  '516 Patent [Ex. A] at Col. 14, ll. 19-21.  Moreover, it is clear from the surrounding claims that, had the patentee deemed those limitations necessary elements of the header as used in Claim 6, those elements would have appeared in the claim itself.

Phillips, 415 F.3d at  1314 ("the usage of a term in one claim can often illuminate the meaning of

the same term in other claims").  For example, Claim 5 recites that the "header" includes "an

address of the client of the first network and a data transmission path to the client of the first

network."  '516 Patent [Ex. A] at Claim 5; Claim 8 (stating that the "header" includes a "reverse

link and a data type").  Because such limitations are set forth in Claims 5 and 8, but not in Claim

1, there is a presumption that those limitations are not present in the "header" of Claim 6.

Phillips, 415 F.3d at 1314-15.  Thus, should the Court deem construction necessary, the Court

should construe this term to mean "a portion of a packet containing information that may include

routing information."

> **H.** ***"in-memory [internal memory] routing tree link information"*** **('271 Patent Claims**
> **1, 8)**

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "data structure resident on computer memory relating to links among or between clients and/or one or more servers" | Information stored in computer memory describing the complete set of communication paths between all clients and the server, having one route between each client and a server | No construction of this term/phrase is necessary at this time |

This language is easily understood by one of ordinary skill in the art.  Nonetheless,

should the Court deem construction necessary, it should construe this term to mean "data

structure resident on computer memory relating to links among or between clients and/or one or

more servers."  This construction is consistent with the specification and the ordinary meaning of

the word "information," which simply refers to facts or knowledge pertaining to routing tree

links.  A person of ordinary skill in the art would understand that information pertaining to

routing-tree links can include any portion of the routing tree – but does not require that the

information contain paths from ***all*** clients to a server.  In particular, the specification describes

how a client sends link information related to its own links in order to optimize and stabilize the network.  See '271 Patent [Ex. B] at Figures 2*a* – 2*o*; Col. 10 – Col. 12, l. 58.

Sensus' proposed construction takes an otherwise easily-understood phrase and rewrites it to include concepts not expressed by the claim itself.  Specifically, Sensus ignores the plain meaning of "information" – a general term that does not speak to the "completeness" of the information – and proposes a construction requires that the "information" be a "***complete*** set of communication paths between ***all*** clients and the server."  Yet nothing in the claims, specification, nor file history require this to be the case.  First, due to the dynamic nature of the system, clients continuously enter and leave the system, thus rendering the set of "all clients" undefined.  See '271 Patent [Ex. B] at Col. 11, l. 52 – Col. 12, l. 4 (describing process of adding a new client to a server).  Second, the specification describes the process of a client notifying a server of a new link (thus "exchanging in-memory routing tree link information") – but that exchange of information need not include information for ***all*** clients.  '271 Patent [Ex. B] at Claims 1; Col. 12, ll. 5-45; Figures 2*a* – 2*o*.  Thus the phrase "all clients" is inconsistent with the intrinsic evidence and can only add confusion.  Finally, requiring that there is "one route between each client and a server" is further inconsistent with the specification, which allows for an alternative, less optimal route to be cached in case the client's current link becomes inoperative.  Id. at Fig. 18; Col. 21, ll. 34-36.

I. ***"instructions for analyzing a data packet to determine if the data packet has been sent on a new optimal route unknown to the client"*** **('271 Patent Claim 1)**

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "computer code for determining whether the data packet has been sent on a new | Computer code for determining the number of hops for a network path used to communicate a data packet between a client and server, and for determining | No construction of this term/phrase is necessary at this time |

| better route based on currently-available information, the better route previously unknown to the client" | whether this network path has fewer hops than the path currently designated as optimal between the client and server | |
|---|---|---|

The Court need look no further than the claim itself for the meaning of this self-defining phrase.  Yet, in contradiction to Federal Circuit precedent, Sensus proposes a narrowing construction that requires the "optimal route" to be limited to the path having "fewer hops" – a construction that renders the independent claim narrower than the dependent claim.  See Dow Chem. Co. v. United States, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000) (concluding that an independent claim should be given broader scope than a dependent claim to avoid rendering the dependent claim redundant).  Specifically, Claim 9 discloses that the "optimal route" can include a route with the fewest hops, through the most robust clients, through the fastest clients, and/or through the clients with the least amount of traffic.  '271 Patent [Ex. B] at Claim 9.  Furthermore, the specification and the file history make clear that optimization of transmission paths can be based on a variety factors:

> other factors can also affect the quality of the data transmission.  For example, the *traffic* of data packets through a particular client modem ….  Also, some radio links may be *less robust* or may be *slower* than other links ….  [I]t will be appreciated by those skilled in the art that *multiple factors* can be used to stabilize or optimize the wireless network system 10 of the present invention.

Id. at Col. 9, ll. 8-23.  Therefore, limiting the "optimal route" to simply the route with the fewest hops is not only improperly narrowing, but contradicts the claims, specification, and file histories.  The "optimal route" is simply a better route based on currently-available information, as will be discussed in more detail below in Part V.M ("optimal route").  See '271 Patent [Ex. B] at Col. 9, ll. 4-5 (the wireless network system is "constantly attempting to optimize itself for the 'best' data transmission").  Therefore, should the Court deem construction of this term necessary, the Court should construe this term to mean "computer code for determining whether the data

packet has been sent on a new better route based on currently-available information, the better

route previously unknown to the client."

### J.   *"map [of data packet transmission paths]"* ('516 Patent Claims 1, 15)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "data structure containing a representation of one or more transmission paths" | Data structure maintained by a server/gateway that stores the complete set of optimal transmission paths between each client and the server/gateway | Data structure containing complete routing information for all nodes in a network |

The "map of data packet transmission paths" is simply a representation of one or more

transmission paths.[5]  Defendants attempt to manufacture non-infringement positions by rewriting

claim language to include unsupported limitations, such as requiring the "map" to be a ***complete***

set of transmission paths.  Claim 1 itself recites "a map of data packet transmission paths of a

***plurality*** *of clients*" – not "all" clients.  Had the patentee intended the map to include all paths,

the claim could have said so.  Moreover, the plain meaning of "map" requires nothing regarding

the "completeness" of its contents.  Sensus goes even further by requiring the map to be

"maintained by a server/gateway," again, in clear violation of Federal Circuit precedent.

Phillips, 415 F.3d at 1323.  Moreover, Sensus' construction is redundant and confusing when

read in connection with its proposed constructions of "transmission path."[6]  Should the Court

deem construction necessary, the Court should construe this term to mean "data structure

---

[5]      This interpretation is further supported by the dictionary definition of the term "map."Merriam-webster.com, defining "map" as "1(a): a representation usually on a flat surface of the whole or a part of an area; 1(b): a representation of the celestial sphere or a part of it; 2: something that represents with a clarity suggestive of a map." (attached hereto as Exhibit F).
[6]      For example, when read in conjunction with its proposed construction of "transmission path" this term would read: "data structure maintained by a server/gateway that stores the complete set of optimal complete end-to-end routes, including all intervening clients, from a client to the gateway between each client and the server/gateway."

containing a representation of one or more transmission paths."  This construction is consistent

with the specification and how a person of ordinary skill in the art would interpret this term.  See

Part V.V ("transmission paths").

**K.  *"network interface"* ('516 Patent Claims 1, 3)**

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "an equipment, program, and/or device capable of communicating with a network" | An equipment, program, or device for connecting to a network | No construction of this term/phrase is necessary at this time |

"Network interface" is a commonly understood word whose meaning is evident from the

claim language.  '516 Patent [Ex. A] at Claim 1 ("a network interface capable of communicating

with a second network.").  However, should the Court deem construction necessary, the Court

should construe this term to mean "an equipment, program, and/or device capable of

communicating with a network," which is consistent with the claims and specification.  See, e.g.,

id. at Col. 7, ll. 57-61 ("a 'network interface' will refer to any such device that allows a server of

the wireless network system of the present invention to communicate, directly or indirectly, with

the second network.").

**L.  *"[new] optimal route [unknown to the client]"* ('271 Patent Claims 1, 2)**

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, see "optimal route." | The path through the least possible number of additional clients [that did not previously exist and the client was not previously aware of] | No construction of this term/phrase is necessary at this time |

See Part V.M ("optimal route").

### M. *"optimal route"* ('271 Patent Claims 1, 2)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "better route based on currently-available information" | Path through the least number of clients | Path with the least number of hops from a client to a server |

The specification makes clear – as do the surrounding claims – that optimization of routes can be based not only on number of hops, but also on factors including, for example, traffic, robustness, and/or transmission reliability.  See '271 Patent [Ex. B] at Claim 9; Col. 5, ll. 8-15; Col. 9, ll. 6-22; Col. 12, l. 12; see also Part V.I.   The network described in the '271 Patent is dynamic in that clients join or leave the network and conditions change continuously.  Therefore the wireless network system is "constantly attempting to optimize itself for the 'best' data transmission."  '271 Patent [Ex. B] at Col. 9, ll. 3-5.  In optimizing itself, the system always chooses the better route from two available routes – the current route and another available route.  Therefore, at any given time, the "optimal route" is the better route of those two routes based on the information available.

Defendants contradict well-settled claim construction principles by proposing a construction that only accounts for a single embodiment of the invention – minimizing number of hops – described in the specification.  Phillips, 415 F.3d at 1323 ("we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment").  Defendants' construction should be rejected.  Should the Court deem construction necessary, it should construe this term to mean "better route based on currently-available information."

### N.  *"optimize the transmission paths"* (**'516 Patent Claims 1, 6, 15**)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "improve the transmission paths" | Select the best path for communicating a data packet from a client to the gateway | No construction of this term/phrase is necessary at this time |

This term uses ordinary terms and does not require construction.  As described in the specification, the wireless network system is "constantly attempting to optimize itself for the 'best' data transmission."  '516 Patent [Ex. A] at Col. 9, ll. 6-9; see also Col. 5, ll. 11-18, 45-49; Col. 9, ll. 6-24; Col. 21, ll. 33-36.  Thus, should the Court deem construction necessary, it should construe this term to mean "improve the transmission paths."

### O.  *"[operable together via] parallel processing"* (**'271 Patent Claim 1**)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "[capable of] performing process(es) concurrently" | [] processing information simultaneously and in a coordinated fashion to perform a single task | [] two or more processors operating simultaneously on the same data |

As recognized by those of ordinary skill in the art, "parallel processing" allows for more than one processor to perform processes at the same time.  Because the processing occurs concurrently, each processor must work on different data, which is consistent with the dictionary definition of this term.  See AMACOM THE COMPUTER GLOSSARY 290 (Alan Freedman 7th ed. 1995) (attached hereto as Exhibit F) (defining "parallel processing" as "a multiprocessing architecture made up of multiple CPUs or computer systems. Either one operation is performed on many sets of data SIMD [Single Instruction, Multiple Data], or different parts of the job are worked on simultaneously MIMD [Multiple Instruction, Multiple Data]").  Sensus' and Trilliant's respective proposed constructions appear to require that the ***same*** data be processed at

the same time.  The processors can perform the same or different tasks, but cannot both process the same information concurrently.  Moreover, there need not be any coordination between the processors, as Sensus proposes.  Therefore, if the Court is compelled to construe "[operable together via] parallel processing," it should be construed to mean "[capable of] performing processes concurrently."

**P.  *"router [server]"* ('516 Patent Claim 3; '271 Patent Claim 1)**

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "an equipment, program, and/or device that facilitates packet delivery" | A computer program that determines the transmission path for sending a data packet between network nodes | No construction of this term/phrase is necessary at this time. |

The meaning of "router" as used within the Patents-in-Suit is consistent with its plain and ordinary meaning, and need not be construed.  As used in the Patents-in-Suit, the "router" simply facilitates packet delivery.  In particular, Claim 1 recites that a "router client" is operable for broadcast communication with the "router server."  Sensus' proposed construction only adds confusion by requiring that the router "determine the transmission path for sending a data packet between network nodes."  Yet Claim 1 itself describes how a ***server program***  (which is included in the server) is "operable for determining an optimal route from the server to the client."  Thus, Sensus' proposed construction is redundant and can only serve to confuse the fact-finder.

Should the Court deem construction necessary, the Court should construe this term to mean "an equipment, program, and/or device that facilitates packet delivery."

### Q. *"routing tree link information"* ('271 Patent Claims 1, 8)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| See "in-memory [internal memory] routing tree link information" | A data structure having the communication links and optimal communication routes between a server and all clients of a wireless network system, having one route between each client and a server | Data structure representing the complete path from each client to a server |

See Part V.H ("in-memory [internal memory] routing tree link information").[7]

### R. *"server"* ('516 Patent Claims 1, 2, 3, 4, 6; '271 Patent Claims 1, 2, 8)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "an equipment, program, and/or device capable of providing a data, digital, or electronic service to clients" | A computer program that receives client requests and provides a service to clients, but is not itself a client | No construction of this term/phrase is necessary at this time. |

The meaning of "server" as used within the Patents-in-Suit is consistent with its plain and ordinary meaning, and need not be construed.  The "server" simply provides a service to the clients.  Sensus proposes that the server be construed to include the phrase "but is not itself a client," but such a construction is unnecessary because different claim terms are presumed to have different meanings.  Applied Med., 448 F.3d at 1333 n.3 ("[T]he use of two terms in a claim requires that they connote different meanings ....") (emphasis in original).  In any case,  the terms "server" and "client" are used differently from each other throughout the Patents-in-Suit. See Part V.B ("client").  Moreover, it is appreciated by those of ordinary skill in the art that a device can operate as a server for one network, but that same device can operate as a client of

---

[7]      It should be noted that Sensus' proposed construction for "routing tree link information" is inconsistent with its proposed construction for "in-memory routing tree link information."

another network.  Therefore, should the Court deem construction necessary, the Court should

construe this term to mean "an equipment, program, and/or device capable of providing a data,

digital, or electronic service to clients."

**S.  *"the path to the gateway through the clients with the least amount of traffic"* ('516 Patent Claims 1, 6, 15)**

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "the path to the gateway through the clients having the lowest volume of packets transmitted through the client per unit time" | Indefinite; this claim term/phrase is not susceptible to construction | No construction of this term/phrase is necessary at this time. |

A person of ordinary skill in the art would understand – based on the specification and

the term's ordinary meaning – that "traffic" is simply a measure of the volume of packet

transmissions through a client.  Declaration of Dr. Samir Das ("Das Declaration," attached hereto

as Exhibit E) at ¶ 11; see also  '516 Patent [Ex. A] at Col. 5, ll. 11-18; Col. 9, ll. 11-15.

Moreover, the specification describes the benefits of minimizing traffic at certain nodes. '516

Patent [Ex. A] at Col. 12, ll. 36-51; see also Figures 2a-2g, 2h'-2h", and 2i-2o.  Therefore, should

the Court deem construction necessary, it should construe this term to mean "the path to the

gateway through the clients having the lowest volume of packets transmitted through the client

per unit time."

It is difficult to understand how Sensus can allege that commonly used terms readily

understood by those of ordinary skill in the art – indeed terms used throughout the '516 Patent

specification – are incapable of construction and can render this claim indefinite.  To that end,

even Defendant Trilliant appears to agree that the term has its plain and ordinary meaning and

further construction is unnecessary.  A claim satisfies the definiteness requirement "[i]f one

skilled in the art would understand the bounds of the claim when read in light of the

specification." Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir.

2001); see also Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1335 (Fed. Cir. 2010)

(claims not indefinite where specification provides a general guideline and examples sufficient to

allow a person of ordinary skill in the art to determine the scope of the claims); Power-One, Inc.

v. Artesyn Techs., Inc., 599 F.3d 1343, 1350 (Fed. Cir. 2010) ("a claim is not indefinite merely

because it poses a difficult issue of claim construction").  The '516 Patent makes clear that

optimization can be based on a number of different factors, including traffic.  Where the

specification provides guidance as to those criteria, the claim is not indefinite.  Paid Search

Engine Tools, 2010 WL 1904545, at *9-*10 (term "of interest" not indefinite because the

specification provided guidance as to what criteria were "of interest").

> ### T.   *"the path to the gateway through the fastest clients"* ('516 Patent Claims 1, 6, 15)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
| --- | --- | --- |
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "the path to the gateway through the clients having the highest packet transmission and/or computing speed" | Indefinite; this claim term/phrase is not susceptible to construction | No construction of this term/phrase is necessary at this time. |

A person of ordinary skill in the art would readily understand the "fastest clients" to

mean those having the highest packet transmission or computing speed.  Das Declaration [Ex. E]

at ¶ 10 (opining that "fastest" refers to the speed at which a client can transmit a packet).

Moreover, the specification provides sufficient guidance regarding the speed of clients consistent

with this understanding.  See, e.g., '516 Patent [Ex. A] at Col. 8, ll. 38-41 ("Gina brand radio

modems … support data speed from 300 to 64 kbps"); Col. 9, ll. 6-24 ("optimization may result

in a routing of data around … slower links").  The patent examiner, during reexamination of the

'516 Patent, understood the meaning of "fastest clients."  Office Action in SN 90/008,005 (Aug.

29, 2007), at p. 4 (likening "fastest clients" to "delay at clients") [Ex. G]; see also Phillips, 415

F.3d at 1317 ("the prosecution history provides evidence of how the PTO and the inventor

understood the patent" (citing Lemelson v. Gen. Mills, Inc., 968 F.2d 1202, 1206 (Fed. Cir.

1992)).  Although Plaintiff as well as Trilliant believe no construction is necessary, should the

Court deem construction necessary, the Court should construe this term to mean "the path to the

gateway through the clients having the highest packet transmission and/or computing speed."

**U.  *"the path to the gateway through the most robust additional clients"* ('516 Patent Claims 1, 6, 15)**

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "the path to the gateway through the most reliable clients or through the clients having the greatest ability to maintain communication under adverse conditions, including but not limited to factors such as: signal strength; battery life; link quality; and susceptibility to malfunctions." | Indefinite; this claim term/phrase is not susceptible to construction | No construction of this term/phrase is necessary at this time. |

The term "robust" is used in the Patents-in-Suit in a manner consistent with its

understood meaning in the art and therefore need not be construed.  As stated in the '516 Patent,

"robustness" refers to reliability and the ability of a client to maintain communication with the

network under adverse conditions.  See '516 patent [Ex. A] at Col. 2, ll. 63-64; Col. 9, ll. 26-34;

see also Das Declaration [Ex. E] at ¶ 12.  A person of ordinary skill in the art would understand

"adverse conditions" to include factors such as signal strength; battery life; link quality; and

susceptibility to malfunctions.  Das Declaration [Ex. E] at ¶ 12.  This construction is further consistent with the dictionary definition of "robust," as it is used in the computing context. MICROSOFT PRESS COMPUTER DICTIONARY 342 (2d. ed. 1994) (attached hereto as Exhibit F) (defining robustness as "soundness; the ability of a program to function, or to continue functioning well, in unexpected situations").  Therefore, should the Court deem construction necessary, the Court should construe this term to mean "the path to the gateway through the most reliable clients or through the clients having the greatest ability to maintain communication under adverse conditions, including but not limited to factors such as: signal strength; battery life; link quality; and susceptibility to malfunctions."  The assertion by a single Defendant, Sensus, that this term is indefinite is completely unfounded – the meaning of "robust" is apparent to one of ordinary skill in the art, and the use of *most* [robust clients]" is a term of degree that is unambiguous and only susceptible to a single meaning.  See Exxon Research, 265 F.3d at 1375.

### V.   *"transmission path"* (**'516 Patent Claims 1, 6, 15**)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
| --- | --- | --- |
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "the route through which a packet travels" | Complete end-to-end routes, including all intervening clients, from a client to the gateway | No construction of this term/phrase is necessary at this time. |

"Transmission path" is an unambiguous term that does not require construction – it is simply the route through which a packet travels.  The claims themselves define the beginning and end of that route, thus rendering Sensus' proposed construction redundant and unnecessary. See, e.g. '516 Patent [Ex. A] at Claim 1 ("where a transmission path of a client … to said server"); see also Biagro W. Sales, 423 F.3d at 1302 ("claim construction begins with, and remains focused on, the language of the claims").  Sensus' proposed construction imports

examples into the claims by requiring that the transmission path must ***always*** be ***from a client to a gateway***.  While Plaintiff agrees that the path is an "end-to-end" route including all intervening clients, that does not change the fact that the path is simply the route through which a packet travels, i.e., from a source, such as a client – to a destination, such as another client or a server.[8]  See, e.g., '516 Patent [Ex. A] at Col. 10, ll. 10-16; Col. 4, ll. 60-63 (packets "include data routing information concerning the path or 'link' from the source of the packet to the destination of the packet within the wireless network.").  Even if the specification discloses transmission paths "from a client to a gateway," the Federal Circuit has cautioned against confining the claim to that embodiment.  Phillips, 415 F.3d at 1323.  Should the Court deem construction necessary, the Court should construe this term to mean "the route through which a packet travels."

### W. *"translates data packets"* ('516 Patent Claim 4)

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Claim construction is unnecessary. The plain and ordinary meaning controls. Alternatively, "performs any necessary conversions to digital packets being sent from one network to another network" | Converts data packet headers from the format required by one network to the format required by another network | No construction of this term/phrase is necessary at this time. |

"Translates data packets" is an unambiguous term whose meaning is evident from the claim – "translates" means to change the format of the data packet into a format used by the receiving network.  Sensus attempts to narrow the claim by limiting the conversion to "data packet headers" in contravention to the specification.  Specifically, the translation process can also involve adding or removing "links and data types" from data packets. See '516 Patent [Ex.

---

[8]     The claim language itself demonstrates that "transmission path" does not only mean a route from a client to the gateway: "optimize transmission paths ***including*** changing the transmission path from the client to the gateway …" '516 Patent [Ex. A] at Claim 1.

A] at Col. 7, l. 64 – Col. 8, l. 16.  Although Plaintiff maintains that construction is unnecessary,

should the Court construe this term, the Court should construe this term to mean "performs any

necessary conversions to digital packets being sent from one network to another network."

## VI.    The Means-Plus-Function Limitations – '516 Patent Claim 6

**A.  *"means for changing the transmission paths of clients to optimize the transmission paths includes [sic: including] changing the transmission path from the client to the gateway so that the path to the gateway is chosen from the group consisting essentially of the path to the gateway through the least possible number of additional clients, the path to the gateway through the most robust additional clients, the path to the gateway through the clients with the least amount of traffic, and the path to the gateway through the fastest clients.***

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Function: Changing the transmission paths of clients to optimize the transmission paths<br>Structure: A radio modem and a microprocessor configured with logic to change the transmission paths and its equivalents | Function: Changing the transmission paths of clients to optimize the transmission paths includes [sic] changing the transmission path from the client to the gateway so that the path to the gateway is chosen from the group consisting essentially of the path to the gateway through the least possible number of additional clients, the path to the gateway through the most robust additional clients, the path to the gateway through the clients with the least amount of traffic, and the path to the gateway through the fastest clients<br>Structure: None disclosed or linked by the specification; indefinite | Function: Changing the transmission paths of clients to optimize the transmission paths including changing the transmission path from the client to the gateway so that the path to the gateway is chosen from the group consisting essentially of the path to the gateway through the least possible number of additional clients, the path to the gateway through the most robust additional clients, the path to the gateway through the clients with the least amount of traffic, and the path to the gateway through the fastest clients<br>Structure: Indefinite for lack of disclosed structure |

The function of this term is to change the transmission paths to optimize the transmission

paths.  The elements listed in the remainder of this term are entitled to their plain and ordinary

meaning and are discussed in detail above.  See Parts V.S-V.U.  Regarding the structure, the

specification plainly discloses "a radio modem and a microprocessor configured with logic" as the structure necessary to perform the function of optimizing the transmission paths.  '516 Patent [Ex. A] at Fig. 12 (illustrating a radio modem 62 including a microprocessor 264); Col. 18, ll. 14-41 ("The radio modem 62 includes a microprocessor 264").  The specification discloses several ways to configure the microprocessor to perform the recited function.  Id. at Col. 9, ll. 6-25 ("multiple factors can be used to stabilize or optimize the wireless network system").  For example, the processor can be configured with logic as described at Column 12, lines 5-36 and Column 21, lines 21-36 (describing clients optimizing paths by looking for shorter route); and at Column 9, lines 16-19 (describing optimization based on robustness or speed of clients); and at Column 9, lines 11-16 (describing optimization based on traffic of clients).  Therefore, the Court should deem the corresponding structure to be "a radio modem and a microprocessor configured with logic to change the transmission paths and its equivalents."  The Court should reject Defendants' unfounded assertion that this term is indefinite.

**B.**  ***"means for converting said data packet to a format used in said second network"***

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Function: Converting said data packet to a format used in said second network<br>Structure: A communication bridge, router, hub, gateway, or Ethernet interface, and their equivalents | Function: Converting said data packet to a format used in said second network<br>Structure: None disclosed or linked by the specification; indefinite | Function: Converting said data packet to a format used in said second network<br>Structure: Indefinite for lack of disclosed structure |

All parties agree on the recited function of this means-plus-function term, but Defendants ignore the corresponding structures that are disclosed in the specification.  Specifically, the '516 Patent discloses that "[t]he combination of the server and the ***router or the like*** performs a "gateway" function, in that it provides translation services between the two networks."  '516 Patent [Ex. A] at Col. 17, ll. 27-29; Col. 5, ll. 52-66.  A "router or the like" can include a

communication bridge, router, hub, gateway, Ethernet interface, and their equivalents, all of which are disclosed in the specification.  Id. at Col. 7, ll. 37-61; Col. 17, ll. 22-30.  Thus, Defendants' assertion that the term is indefinite must fail in light of the clear guidance in the specification, and the Court should construe this term to mean "A communication bridge, router, hub, gateway, or Ethernet interface, and their equivalents."

### C.  *"means for converting said data packet to a format used in said wireless network"*

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Function: Converting said data packet to a format used in said wireless network<br>Structure: A communication bridge, router, hub, gateway, or Ethernet interface, and their equivalents | Function: Converting said data packet to a format used in said wireless network<br>Structure: None disclosed or linked by the specification; indefinite | Function: Converting said data packet to a format used in said wireless network<br>Structure: Indefinite for lack of disclosed structure |

See Part VI.B ("means for converting … to a format used in said second network").

### D.  *"means for receiving a data packet from a client of said wireless network"*

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| Function: Receiving a data packet from a client of said wireless network<br>Structure: A radio modem and its equivalents | Function: Receiving a data packet from a client of said wireless network<br>Structure: A server radio modem and its equivalents. | Function: Receiving a data packet from a client of said wireless network<br>Structure: Indefinite for lack of disclosed structure |

It is well known that the only structure necessary for sending or receiving a data packet to or from the wireless network is a simple a radio modem, as described throughout the '516 Patent. '516 Patent [Ex. A] Col. 2; Col. 4, ll. 51-65; Col. 6, ll. 8-17.  Sensus' proposed construction improperly requires that the corresponding structure be a ***server*** radio modem although not required by the '516 Patent.  Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1334-35 (Fed. Cir. 2004) (structures "not required for performing the claimed function" are "superfluous" to claim construction analysis and do not serve as claim limitations).  In fact, the specification

describes a radio modem 62 which "can be similar to **all** of the radio modems described herein." '516 Patent [Ex. A] at Fig. 12; Col. 18, ll. 14-18.  Therefore, the Court should reject Defendants' proposed construction and construe this term to mean "a radio modem and its equivalents."

**E.** ***"means for receiving a data packet from said second network"***

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| <u>Function</u>: Receiving a data packet from said second network <br> <u>Structure</u>: A network interface and its equivalents | <u>Function</u>: Receiving a data packet from said second network <br> <u>Structure</u>: A server/gateway transceiver for communication with the Internet or a private Intranet using a TCP/IP network protocol and its equivalents. | <u>Function</u>: Receiving a data packet from said second network <br> <u>Structure</u>: Indefinite for lack of disclosed structure |

The '516 Patent clearly states that "a 'network interface' will refer to any such device that allows a server of the wireless network system of the present invention to communicate, directly or indirectly, with the second network."  <u>Id.</u> at Col. 7, ll. 57-61; Col. 5, ll. 54-58 ("The server includes … a network interface capable of communicating with the second network").  Thus, the function of receiving data from the second network is a network interface.  Sensus' proposed construction is both confusing and overly limiting.  For example, a "server/gateway transceiver" is term not used in the '516 Patent, and it is unclear why a "transceiver" is necessary to communicate with the second network.  Next, "communication with the Internet or a private Intranet using TCP/IP" improperly narrows the claim to a single embodiment.  <u>Id.</u> Col. 5, ll. 5-60; Col. 7, ll. 44-47 (describing different types of networks as the "second network").  Therefore, the Court should construe this term consistently with the '516 Patent disclosure to mean "a network interface and its equivalents."

**F.** ***"means for sending said data packet to a proper location on said second network"***

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| <u>Function</u>: Sending said data packet to a proper location on | <u>Function</u>: Sending said data packet to a proper location on | <u>Function</u>: Sending said data packet to a proper location on |

| | | |
|---|---|---|
| said second network<br><u>Structure</u>: A network interface and a microprocessor configured to send a data packet and its equivalents | said second network<br><u>Structure</u>: A server/gateway transceiver and router for communication with the Internet or a private Intranet using a TCP/IP network protocol and its equivalents. | said second network<br><u>Structure</u>: Indefinite for lack of disclosed structure |

Like the "means for receiving a data packet" from the second network, means for sending a data packet likewise requires a network interface.  <u>Id.</u> at Col. 17, ll. 31-41.  Here, sending the data packet to a proper location also requires a microprocessor configured to send a data packet.  <u>Id.</u> at Fig. 10.  Therefore, the Court should construe this term to mean "a network interface and a microprocessor configured to send a data packet and its equivalents."  Sensus again proposes a structure that does not appear in the '516 Patent, and further limits the "second network" to the Internet or a private Intranet.  As discussed above, this is an improper narrowing construction, and should be rejected.

**G.** *"means for transmitting said data packet with said header to a client of said wireless network"*

| Plaintiff's Position | Sensus' Position | Trilliant's Position |
|---|---|---|
| <u>Function</u>: Transmitting said data packet with said header to a client of said wireless network<br><u>Structure</u>: A radio modem and its equivalents | <u>Function</u>: Transmitting said data packet with said header to a client of said wireless network<br><u>Structure</u>: A server radio modem and its equivalents. | <u>Function</u>: Transmitting said data packet with said header to a client of said wireless network<br><u>Structure</u>: Indefinite for lack of disclosed structure |

See Part VI.D ("means for receiving … from a client of said wireless network").

**VII.   Conclusion**

For the reasons set forth above, Plaintiff respectfully requests that this Court construe the disputed claim terms in accordance with Plaintiff's proposed constructions set forth above.

Respectfully submitted this 1st day of June, 2010

ROBBINS GELLER RUDMAN & DOWD LLP


/s/ Jessica K. Redmond
JESSICA K. REDMOND

JOHN C. HERMAN
RYAN K. WALSH
JASON S. JACKSON
JESSICA K. REDMOND
Monarch Centre, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
(404) 504-6500 (telephone)
(404) 504-6501 (fax)
jherman@rgrdlaw.com
rwalsh@rgrdlaw.com
jjackson@rgrdlaw.com
jredmond@rgrdlaw.com

WARD & SMITH LAW FIRM
T. JOHN WARD, JR. (State Bar No. 00794818)
P.O. Box 1231
Longview, TX  75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (fax)
jw@jwfirm.com

KENDALL LAW GROUP, LLP
JOE KENDALL (State Bar No. 11260700)
3232 McKinney Avenue, Suite 700
Dallas, TX  75204
(214) 744-3000 (telephone)
(214) 744-3015 (fax)
jkendall@kendalllawgroup.com

Attorneys for Plaintiff
IP CO, LLC d/b/a Intus IQ

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to

electronic service are being served with a copy of the foregoing document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) on this the 1st day of June, 2010.


/s/ Jessica K. Redmond